**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

---

**KIRSTEN CASTLE**
                       **Plaintiff,**                                **Civil Case No:**

  **v.**

**BRIAN NOLAN; BEAVER CREEK RESORT COMPANY;**
**And, THE VAIL CORPORATION**
                       **Defendants.**

---

**COMPLAINT WITH REQUEST FOR TRIAL BY JURY**

---

NOW COMES the above named plaintiff, by her attorneys, GENDE LAW OFFICES, and as and for her claims against the above named defendants, alleges and shows to the Court as follows:

## I.   THE PARTIES

1.   That at the present time, the plaintiff, Kirsten Castle, is an adult citizen and resident of the State of Illinois, residing at 3740 Bordeaux Drive, Hoffman Estates, IL 60192.

2.   That at the present time, the defendant, Brian Nolan, is an adult resident of the State of Colorado, that he is a member of the Beaver Creek Resort Company (BCRC) Board of Directors; and that he has retained Ridley McGreevy & Winocur P.C. for representation in this matter.

3.   That BCRC is a Colorado non-profit corporation that combines a homeowner's association and a resort association with some municipal services.  Elizabeth C. Jones is the registered agent with offices at 26 Avondale Lane, Ste. 118C, Avon, Colorado 81620.  BCRC is situated in Avon, Colorado and was created to help the village of Beaver Creek, CO become and remain a one-of-a-kind resort community.  That BCRC has ten staff members who are provided pursuant to a contractual agreement with Vail that sets forth Vail is responsible for providing BCRC with certain services for a fixed fee.  These services include marketing, transportation, municipal

services, monitoring of environmental quality, architectural design review board services, accounting, budgeting, and planning.

4. That as a member of the board of directors of BCRC, Mr. Nolan works closely with Vail and on Vail property in the development of community events that benefit both Vail and BCRC. That as a board member of BCRC, Mr. Nolan had unlimited access to the plaintiff while she engaged in work-related activities both in the workplace and off-site at special events, and that the Board of Directors meetings and office space are in the same location where Vail assigned plaintiff to work.

5. That The Vail Corporation (Vail), is a domestic corporation, with headquarters in Avon, Colorado and duly operating under and by virtue of the laws of the State of Colorado, with offices of its Registered Agent, Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

## II. JURISDICTION AND VENUE

6. This Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343.

7. That this Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiff's federal claims pursuant to 28 U.S.C. §1367.

8. That the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, exclusive of costs, interests, and attorneys' fees.

9. This Court has personal jurisdiction over all the parties in this matter: the Defendant Brian Nolan is a resident of the State of Colorado, and upon information and belief is domiciled in Colorado; the Defendant BCRC is incorporated in Colorado, does substantial business in the State, and can be fairly regarded as at home in Colorado; the Defendant Vail's headquarters, per their website, "has been the heart of Temecula [Colorado] since 1867", does substantial business in Colorado, and the Defendant Vail can be fairly regarded as at home in Colorado.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the entirety of the events or omissions giving rise to this action occurred in Colorado and/or venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because all of the Defendants can fairly be regarded as at home in Colorado.

11. Attached hereto and incorporated within by reference as Exhibit A, Exhibit B, are the EEOC Notice of Right to Sue and associated email.

12. The plaintiff has exhausted her administrative remedies, has been given permission to sue by the U.S. Equal Employment Opportunity Commission – which is attached hereto as **Exhibit A**, and is filing this Complaint within 90 days of receiving Notice on July 7, 2020, the email of which is attached hereto as **Exhibit B**.

### III. FACTUAL ALLEGATIONS

13. The plaintiff, Kirsten Castle, was hired by Vail on or about January 20, 2015 as a Senior Specialist: Events (Events Manager), a position she held until Vail constructively discharged her on November 9, 2019. Her job duties included supervising, carrying out, and attending events, both on and off Beaver Creek mountain as an employee of Vail while assigned to Beaver Creek Resort Company (BCRC).

14. As a BCRC board member, Mr. Nolan regularly attended board meetings on the Vail premises where plaintiff performed many of her daily job duties. Plaintiff's job duties frequently put her in contact with Mr. Nolan as he undertook event planning for BCRC as a board member for the benefit of Beaver Creek and Vail. The plaintiff met Mr. Nolan in December of 2018 in association with a "Blues Brews and BBQ" event.

15. Over time, Mr. Nolan imposed himself on the plaintiff by assuming an unsolicited working and mentor/protégé relationship where he asserted himself in the role of career advisor to

the plaintiff, routinely promising plaintiff professional connections and advancement opportunities in the entertainment and event support industry.

16.     The plaintiff and Mr. Nolan exchanged numerous texts from January 31, 2019 through August 31, 2019; many of which evince Mr. Nolan's untoward interest in plaintiff's personal life, inquiring often as to her whereabouts, daily activities, nightly activities, social activities and personal travel plans.  The vast majority of Mr. Nolan's communications with the plaintiff involved invitations to join him for drinks and/or dining at various bars and restaurants.

17.     During the course of these communications, Mr. Nolan enticed plaintiff to meet him in Denver in June of 2019 for a business trip where Mr. Nolan promised to introduce plaintiff to business associates to advance her career and frequent bars/restaurants for entertainment ideas. Through his grooming of the plaintiff, she trusted Mr. Nolan as an advisor that had her professional advancement in mind and who was intent on assisting her with career development.

18.     On June 29, 2019, the plaintiff traveled to Denver to meet Mr. Nolan for professional development.  Mr. Nolan reserved and paid for a private suite at Hyatt Regency.  Mr. Nolan also had a private residence in Denver.   After plaintiff arrived, Mr. Nolan made no attempt to introduce plaintiff to his business associates.  Instead, Mr. Nolan escorted plaintiff from one bar to another on the night of June 29, plied her with alcohol, and began making sexual advances while the plaintiff grew progressively more inebriated and vulnerable.

19.     That evening, in the first of three assaults, Mr. Nolan grabbed plaintiff's hand to lead her to various bars.  She communicated to him her discomfort over this unwanted gesture and immediately pulled away from him.

20.     Then Mr. Nolan cajoled the plaintiff into visiting another drinking establishment by convincing her that it was a "speakeasy" necessary for research for a similar event she was planning for Vail.

21. After leaving the speakeasy, Mr. Nolan drove the plaintiff to his Denver condominium.  She expressed discomfort about being there, but Mr. Nolan continued to entice his target with more alcoholic beverage.  Mr. Nolan opened a bottle of wine and spent the next hour expressing his personal feelings for plaintiff which she told him were not reciprocated.

22. He assaulted her by grabbing her arms and restraining her movement.  Plaintiff broke free and fled the condominium, telling Mr. Nolan that she was returning to her hotel.  Mr. Nolan convinced the plaintiff that he should accompany her because she was in an unfamiliar location and would get lost.

23. Once at the Hyatt Regency, paid for by Mr. Nolan, he followed her to the elevator and walked her to her room.  The plaintiff asked Mr. Nolan to leave, but he entered the room, pushed her onto the bed, and assaulted her again.  He left shortly thereafter, whereupon plaintiff locked the door to her room to prevent his return.

24. On June 30, 2019, in a text, Mr. Nolan informed the plaintiff that he would be coming to her room shortly.  Plaintiff informed him that she was going to "do her own thing" rather than meet with him.  He then invited her to the pool.  She declined.  He then invited her out for a night of "food, drink and adventure."  She accepted only his dinner invitation.

25. On July 1, 2019, Mr. Nolan continued to target plaintiff and texted her about a possible new job in Kansas City through a contact of his named John Westerhaus.  Mr. Nolan asked the plaintiff to call him to discuss.  She did not respond.

26. He sent another unsolicited text on July 2, 2019, which she ignored.  On July 3, 2019, Mr. Nolan sent another unsolicited text in which he remarked:

> More then fair if your unhappy with me but want to download Kansas City update as John Westerhaus is actually sort of customizing job very much to what you speak about wanting.

He then asked her to call him.  She did not.

27. Mr. Nolan made additional unsolicited text communications with the plaintiff in early July. She did not respond.

28. Mr. Nolan began promising more career opportunities in Kansas City. On July 9, 2019, the Plaintiff finally relented and responded to Mr. Nolan. Her text contacts with Mr. Nolan increased while she attempted to secure the promising new position, however, when that opportunity did not materialize, the texting between plaintiff and Mr. Nolan essentially ended.

29. Undeterred and becoming increasingly frantic, Mr. Nolan left multiple voice mail messages beseeching plaintiff to respond to him.

30. Mr. Nolan used his superior position of power and influence over plaintiff seeking to lure a much younger, vulnerable professional associate into a personal relationship with him seeking physical and sexual gratification offering career advancement in return for personal affection, essentially a quid pro quo. He groomed her with promises of assistance with her career. Relying on his statements about business connections and good intentions toward her, Mr. Nolan attempted to take full advantage for his own personal interest and desires.

31. As a result of his unwanted advances and the assaults which she endured, plaintiff suffered and continues to suffer symptoms of anxiety and depression and other symptoms associated with her injuries, along with lost income and being forced out of a multi-billion dollar corporation at which the young Vail associate had a bright future and a job she loved.

32. On August 22, 2019, the plaintiff informed her manager, Laura Waniuk, Director of Events and Sponsorship, of Mr. Nolan's assaults on her in Denver.

33. In spite of being informed of this incident, Vail continued to give Mr. Nolan unlimited access to the Vail facility where plaintiff worked. In an unseemly attempt to assuage plaintiff's fear of further assaults, management directed her to hide under a desk should Mr. Nolan come into her proximity. Management also informed plaintiff that if Mr. Nolan was expected in the

building, she would be warned in advance and directed to move to another location to continue working.

34. These absurd arrangements failed to ensure the safety of plaintiff in her workplace and only worked to elevate her apprehension of Mr. Nolan and anxiety of being in contact with him while working for Vail.

35. Considering the serious nature of the assault and targeting Mr. Nolan engaged, Vail agreed to initiate an investigation into Mr. Nolan's misconduct.

36. Vail claimed to the EEOC that its investigation concluded that there was no evidence to support the allegations brought forward by the plaintiff. However, Vail required Mr. Nolan to enter a "No Contact Agreement" agreement on October 30, 2019, stating that Vail "has been unable to conclude whether there is merit to Castle's complaints." The "No Contact Agreement" contains no consequences should Mr. Nolan violate it.

37. Plaintiff was initially permitted to work remotely during the purported investigation and continued to do so while Vail slowly phase her out of work responsibilities and prevented access to her work emails, until she was constructively discharged on September 9, 2019. Plaintiff's concern was her emotional health and physical safety. As the No Contact Agreement had no enforcement mechanism, and Vail all but exonerated Mr. Nolan's sexual assault and harassment, the Plaintiff was forced to either work remotely or return to an unsafe work environment.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
HOSTILE WORK ENVIRONMENT/BREACH OF DUTY

38. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

39. The sexual assault and harassment plaintiff suffered while a Vail employee was sufficiently severe or pervasive to alter the conditions of her employment and created an abusive

working environment.  A single incident may constitute harassment, especially if the incident is prolonged, offensive and very serious in nature.  Plaintiff suffered a combination of events with varying degrees of seriousness, including 2 assaults, and frequency that amounted to harassment.  Vail knew or should have known of Mr. Nolan's misconduct and failed to take adequate steps to maintain a safe work place for its employee, the plaintiff.

40. That subsequent to plaintiff's informing Vail of the assault, Vail did little to ensure her safety and well-being in her work environment.  In fact, Mr. Nolan was asked to sign a No Contact Agreement that contained no consequences should he violate it.  Vail had a duty to exercise due care toward plaintiff by providing a safe work environment within which to perform her duties of employment; that Vail knew that failure to exercise due care in providing a safe work environment would cause plaintiff severe emotional distress; that Vail breached its duty by failing to protect plaintiff from defendant, Brian Nolan, after plaintiff informed Vail that she had been sexually assaulted by him; that as a proximate result of Vail's breach of duty, the plaintiff suffered and continues to suffer extreme emotional distress; that as a further proximate result of Vail's breach of duty to her, plaintiff has had to cease her employment with the Vail over concern for her safety, as well as past and future lost wages and stunted career advancement in her field of choice.

## **SECOND CLAIM FOR RELIEF**
UNLAWFUL RETALATION PURSUANT TO 42 U.S.C. §2000(e)
& CO. REV. STAT. SEC. 24-34-402

41. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

42. The Defendants, Vail and BCRC, retaliated against the Plaintiff for engaging in the protected activity of filing a discrimination charge with the Equal Employment Opportunity Commission.

43. The Defendants unlawfully retaliated against the Plaintiff by failing to ensure her well-being at her office, forcing her to work remotely, stripping her of her previous assignments, and giving her tasks which could not be completed remotely, and 'boxing her out' from work responsibilities.

44. The unlawful retaliation by the Defendants resulted in damages in an amount to be shown at trial.

### **THIRD CLAIM FOR RELIEF**
CONSTRUCTIVE DISCHARGE
C.R.S. §§ 24-34-306, 24-34-402

45. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

46. Plaintiff was subject to harassment because of her sex as stated herein.

47. The harassment and inadequate response by the Defendants thereto rendered Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

48. Plaintiff has suffered damages, as stated herein, as a result of the retaliation and constructive discharge in an amount to be shown at trial.

### **FOURTH CLAIM FOR RELIEF**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

50. Mr. Nolan intentionally inflicted emotional distress on plaintiff, wherein he caused severe emotional distress to another and who intentionally or recklessly inflicted emotional distress by acting in an extreme and outrageous way.

51.     On two occasions Mr. Nolan's extreme and outrageous behavior: (1) grabbing plaintiff's arms, wrapping his arms around her body and restraining her movement; and (2) pushing the plaintiff onto her hotel room bed, jumping on her to restrain her, pinning her arms down and kissing and touching her without her consent did cause harmful and offensive contact with the plaintiff.  Mr. Nolan's behavior resulted in the plaintiff's suffering severe emotional distress as evidenced by the findings of her therapist, Nicole Miller.  Ms. Miller's diagnosis of the plaintiff was "Generalized Anxiety Disorder," "Adjustment Disorder, with mixed anxiety and depressed mood," and "Post-Traumatic Stress Disorder, Unspecified."

## FIFTH CLAIM FOR RELIEF
ASSAULT AND BATTERY

52.     Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

53.     The prima facie case for assault has three components:  a.) intent, or an intentional attempt or threat to inflict injury on another person; b.) coupled with an apparent ability to cause the harm; and c.) which creates a reasonable apprehension of bodily harm or offensive contact in the victim.  Through the doctrine of transferred intent, the assault on plaintiff became a battery.  Mr. Nolan intended to commit an assault on plaintiff.  By actually making the physically harmful and offensive contact with plaintiff's body, the assault became a battery.

54.     On two occasions, the defendant, Mr. Nolan attempted and did cause harmful and offensive contact with the victim/plaintiff.

## SIXTH CLAIM FOR RELIEF
BREACH OF FIDUCIARY DUTY

55.     Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

56. As a member of the board of directors of Beaver Creek Resort Company, Mr. Nolan is a fiduciary. A fiduciary duty imposes an obligation on a board member that is higher than the morals of the average working relationship. A person acting in a fiduciary capacity is held to a higher standard of loyalty, honesty, and trust. He is duty bound to remain faithful to the mission of the organization, acting at all times in a manner that solely benefits the organization as opposed to his own best interests or personal profit.

57. By grooming a young employee and then assaulting her, Mr. Nolan breached his fiduciary duty. By acting for his own personal gain he violated the trust and confidence placed in him by BCRC. As a result of this breach, the plaintiff was injured emotionally and financially and continues to suffer the deleterious effects of Mr. Nolan's wrongdoing.

## V.  JURY DEMAND

Please take notice that the plaintiff demands a jury trial in the above entitled action.

## VI. PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff against each of the Defendants and grant:

A. Compensatory and consequential damages, including damages for emotional distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. Economic losses on all claims allowed by law;

C. Special damages in an amount to be determined at trial

D. Punitive damages on all claims allowed by law against individual Defendants in an amount to be determined at trial;

E. Attorneys' fees and the costs associated with this action;

F. Pre- and post-judgment interest at the lawful rate; and

G. Any further relief this court deems just and proper, and any other appropriate relief at law and equity.

Respectfully submitted this 18th day of August, 2020.

                                **GENDE LAW OFFICE, S.C.**
                                Attorneys for Plaintiffs

                        By:_____
                                James J. Gende II
                                State Bar No. 1030921

**MAILING ADDRESS:**
N28 W23000 Roundy Drive, Ste. 200
Pewaukee, WI 53072
Telephone: 262.970.8500
Facsimile: 262.970.7100
jgende@jamesgendelaw.com

# EXHIBIT A

**EXHIBIT A**

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Kirsten Castle<br>3740 Bordeaux Dr.<br>Hoffman Estates, IL 60192 | From: | Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-00030 | **Philip Gross,**<br>**Supervisory Investigator** | (303) 866-1318 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

For **Amy Burkholder,**
**Director**

*(Date Mailed)*

cc:
**Emma Nasif, Human Resources Director**
**VAIL RESORTS**
**390 Interlocken Crescent, #100**
**Broomfield, CO 80021**

**James J. Gende, II., Esq.**
**Gende Law Office**
**N 28 W 23000 Roundy Drive**
**Suite 200**
**Pewaukee, WI 53072**

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**EXHIBIT B**

From: MATTHEW NITTA [mailto:MATTHEW.NITTA@EEOC.GOV]
Sent: Tuesday, July 7, 2020 3:04 PM
To: 1kirstencastle@gmail.com; James Gende <jamesg@jamesgendelaw.com>; Enasif@vailresorts.com
Subject: 440-2020-00030 Kirsten Castle v. Vail Resorts dba Beaver Creek Resorts Company

Mmes. Castle, Nasif and Mr. Gende,

Please see attached Notice of Right to Sue issued by the Equal Employment Opportunity Commission (EEOC) regarding the aforementioned charge of discrimination in the subject line of this e-mail.

No hardcopy to follow.
Please acknowledge receipt of this e-mail.

Thank you for your attention to this matter.

Equal Employment Opportunity Commission
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, CO  80203